# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **JOHN FORD DIETZ** | * | **CIVIL ACTION NO. 08-0521** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **ANNE BENNETT MORRISON DIETZ,** **ET AL** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

Pending before the undersigned for report and recommendation is the

Motion to Dismiss Based on Lack of Personal Jurisdiction filed by defendant,

Richard Morrison ("Morrison"), on April 18, 2008. [rec. doc. 4]. The motion is

opposed by plaintiff, John Ford Dietz ("Mr. Dietz"), who filed an opposition on

May 16, 2008. [rec. doc. 17]. On May 29, 2008, Morrison filed a reply brief. [rec.

doc. 21].

Oral argument was held on the motion on June 10, 2008. [rec. doc. 22].

After the hearing, the undersigned took the matter under advisement. Based on

the following reasons, I recommend that the motion be **GRANTED IN PART**

**AND DENIED IN PART**.

## FACTUAL BACKGROUND

Plaintiff, John Ford Dietz, and defendant, Anne Bennet Morrison Dietz ("Mrs. Dietz"), were married in Santa Fe, New Mexico on December 15, 1990. Subsequently, they lived in San Miguel de Allende, Guanajuato, Mexico. Two children were born of the marriage: A.M.D., born on December 14, 1994, and A.J.M.D., born on June 23, 1998. The couple was divorced by Judgment dated September 10, 2001, by the Minor Court in San Miguel De Allende, Mexico (the "Mexican Court").

In the Judgment, Mrs. Dietz was awarded custody of the children. However, in January, 2007, Mr. Dietz took the child, A.M.D., from Mexico to the United States. He then brought the other child, A.J.M.D., to the United States in May of 2007.

On July 13, 2007, Mrs. Dietz filed a Petition for Return of Children in the 15th Judicial District Court for the Parish of Vermilion, State of Louisiana, under Docket No. 87187. That action was filed pursuant to the Hague Convention, as codified in the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. § 11601, *et seq*. At the time of the application, Mr. Dietz was living in Gueydan, Louisiana with the children.

On August 24, 2007, John Dietz removed the case to this Court under Docket No. 07-1398 (the "Hague Convention case"). That case was tried on June 3-4, 2008, and taken under advisement. Written Reasons for Judgment and a Judgment were signed and filed on September 17, 2008 in that case.

On March 13, 2008, John Dietz filed this suit for defamation, extortion and conspiracy against Morrison and Mrs. Dietz in the 15th Judicial District Court, Parish of Vermilion, State of Louisiana. Defendant, Morrison, is Mrs. Dietz's older brother. Mr. Dietz claims that defendants used improper proceedings and methods for their financial advantage and/or plaintiff's financial deprivation. On April 11, 2008, defendants removed the action to this Court.

### *Analysis of Facts and Law*

Morrison filed the instant motion to dismiss on the grounds that he has insufficient minimum contacts with Louisiana for this Court to exercise personal jurisdiction over him. He states that he is a domiciliary and resident of California. He claims that he has never lived in Louisiana, has no family in Louisiana, does no business in Louisiana, and owns no property here. He says that he has been to Louisiana only one time in order to attend a hearing regarding Mr. Dietz's alleged wrongful taking of A.J.M.D. from Mexico to the United States.

Mr. Dietz contends that Morrison's contacts with Louisiana are sufficient under the "conspiracy theory of jurisdiction" for this Court to exercise personal jurisdiction over him, as Morrison hired and continues to pay for Louisiana lawyers that initiated custody proceedings in Louisiana; that he is physically in the state and funds Mrs. Dietz's efforts to take custody of the children; that he emailed Albert Dietz, Mr. Dietz's father, on September 7, 2007; that he phoned Mr. Dietz's parents from September 8 to 14, 2007; that he sent another email to "Louisiana resident" on September 14, 2007 threatening the relationship between Mr. Dietz's parents and their grandchildren; that he emailed Mr. Dietz and Charlie Fitzgerald (counsel for Mrs. Dietz in the Hague Convention case) on October 5, 2007; that he sent an email to Mr. Dietz and Albert Dietz on October 15, 2007; that he sent a letter to Louisiana, to St. Peter School, on October 23, 2007; that he sent an email to Mr. Dietz on October 28, 2007; that he sent an email to Mr. Dietz, Albert Dietz and Scott Winstead (at the time, counsel for Mr. Dietz in the Hague Convention case) on November 15, 2007, and that he sent an email to Mr.Dietz, Scott Winstead, Albert Dietz, and Charlie Fitzgerald on December 3, 2007. In the alternative, he argues that specific and/or general jurisdiction exists in this case.

## Minimum Contacts

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution. *Ruston Gas Turbines, Inc. v. Donaldson Company, Inc.*, 9 F.3d 415, 418 (5th Cir. 1993). Louisiana's long-arm statute has been specifically amended to permit service of process to the full extent permitted by the due process clause of the United States Constitution. *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir. 1990). Thus, the statutory and constitutional inquiries merge. *Id*.

The due process clause of the Fourteenth Amendment, as interpreted by the Supreme Court, permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has established "minimum contacts" with the forum state and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." *Ruston Gas Turbines*, 9 F.3d at 418 (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). The "minimum contacts" prong of the inquiry may be further subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction.

*Gundle Lining Construction Corporation v. Adams County Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996).

As set out above, plaintiff asserts jurisdiction on the basis of the "conspiracy theory of personal jurisdiction." In the alternative, he argues that specific and/or general jurisdiction exists.

### *Conspiracy Theory of Jurisdiction*

Plaintiff first asserts jurisdiction under the "conspiracy theory of jurisdiction," claiming that all of Mrs. Dietz's Louisiana actions, and Louisiana-directed actions, are also directly attributable to Morrison, her alleged co-conspirator. The conspiracy theory of jurisdiction provides that where a court has personal jurisdiction over the co-conspirator of a non-resident defendant due to overt acts committed by the co-conspirator in the forum in furtherance of the conspiracy, the co-conspirator is deemed the non-resident defendant's "agent" for purposes of the long-arm statute. *U.S. v. Philip Morris Inc.*,116 F.Supp.2d 116, 122 (D.D.C. 2000) (*citing Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1031 (D.C. Cir.1997); *Compass Marketing, Inc. v. Schering-Plough Corp.*, 438 F.Supp.2d 592 (D.Md. 2006)). To satisfy this standard, the plaintiff must: (1) make a *prima facie* factual showing of a conspiracy (*i.e.*, point to evidence showing the existence of the conspiracy and the defendant's knowing

participation in that conspiracy); (2) allege specific facts warranting the inference that the defendant was a member of the conspiracy; and (3) show that the non-resident defendant's co-conspirator committed a tortious act in furtherance of the conspiracy in the forum state. *United Phosphorus, Ltd. v. Angus Chemical Co.*, 43 F.Supp.2d 904, 912 (N.D.Ill.1999).

Plaintiff has cited no authority from the Fifth Circuit indicating that the Fifth Circuit has adopted this theory of personal jurisdiction. The Court has conducted its own independent research, and has been unable to find any decisions from the Fifth Circuit specifically dealing with this issue, either. However, district court cases from within the circuit have rejected this theory.

In *Hawkins v. Upjohn Co.*, 890 F.Supp. 601 (E. D. Tex. 1994), the plaintiffs argued that the court had personal jurisdiction over the defendants under a conspiracy theory of personal jurisdiction because it had general jurisdiction over a co-conspirator. In rejecting this theory, the court noted that there was no support in the Fifth Circuit to support the court's exercising personal jurisdiction on that basis. The court stated that, in fact, the little available case law on this topic was contrary to the plaintiffs' position, stating as follows:

> In *Bamford v. Hobbs*, 569 F.Supp. 160, 169 (S.D.Tex.1983), the court stated, "no court has conferred jurisdiction over an alleged conspirator merely because jurisdiction exists as to a fellow alleged

conspirator." In the only Fifth Circuit case which even tangentially dealt with the position articulated by the plaintiffs, the court implicitly recognized that personal jurisdiction over one defendant conspirator is not sufficient to grant personal jurisdiction over a non-resident co-conspirator. *See Thomas v. Kadish*, 748 F.2d [276 (5th Cir. 1984] at 282; *see also Star Technology, Inc. v. Tultex Corp*., 844 F.Supp. 295, 299 (N.D.Tex.1993) ("Although Plaintiff accuses [the non-resident defendant] of conspiracy, that allegation alone will not support the Court's exercise of jurisdiction *absent minimum contacts*.") (emphasis added). Therefore, plaintiffs' conclusory allegations that the RICO defendants conspired with defendant Upjohn are insufficient to establish personal jurisdiction over the RICO defendants absent minimum contacts with Texas. *See Thomas*, 748 F.2d at 282.

More importantly, this court should not exercise personal jurisdiction over the RICO defendants pursuant to plaintiffs' conspiracy theory because to do so would allow any defendant, who is allegedly a co-conspirator with a person under the court's personal jurisdiction, to be haled into a forum with which that defendant has no contacts. This result would severely undermine the Supreme Court's rationale that the "Due Process clause 'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.' " *Burger King*, 471 U.S. at 473, 105 S.Ct. at 2182 (*quoting World-Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567).

*Id*. at 608-609.

The undersigned has found no support for the proposition that the Louisiana Supreme Court would adopt the conspiracy theory of jurisdiction to satisfy the minimum contacts prong of the inquiry. Rather, the undersigned finds that the exercise of personal jurisdiction over Morrison, based on a conspiracy

theory, when he does not otherwise have sufficient minimum contacts with the state of Louisiana on his own, would offend traditional notions of fair play and substantial justice.  The burden is on the plaintiff to show that jurisdiction exists, and I do not find that this burden can be met under the conspiracy theory of jurisdiction proposed by Mr. Dietz.

Additionally, I find, as did the court in *Hawkins*, that allowing a defendant to be haled into court without having sufficient minimum contacts with the state in which that court sits would not afford that defendant due process and would offend traditional notions of fair play and substantial justice.  *See also Arthur v. Stern*, 2008 WL 2620116, at *10 n.5  (S.D. Tex. June 26, 2008) (noting that the Fifth Circuit rejected the idea that one conspirator's contacts may be automatically attributed to another, *citing Delta Brands Inc. v. Danieli Corp.*, 99 Fed. Appx. 1, 5 (5th Cir. 2004)).

Accordingly, the undersigned finds that this argument lacks merit.

### *General Jurisdiction*

Plaintiff next asserts that general jurisdiction exists in this case due to Morrision's "extensive and egregious pattern of Louisiana focused misconduct." [rec. doc. 17, p. 14].  Where a cause of action does not arise out of a foreign defendant's purposeful contacts with the forum, due process requires that the

defendant have engaged in "continuous and systematic contacts" in the forum to support the exercise of "general" personal jurisdiction over that defendant. *Helicopteros Nacionales*, 466 U.S. at 415-416, 104 S.Ct. at 1872-1873; *Dalton*, 897 F.2d at 1362. In this situation, the forum state has no direct interest in the specific cause of action asserted. *Dalton*, 897 F.2d at 1362. Accordingly, contacts of a more extensive quality and nature are required. *Id.*

Plaintiff contends that Morrison's e-mails provide a portion of the basis to exercise jurisdiction over him. Specifically, he asserts that Morrison purposely reached out with "hardball" tortious actions to Louisiana by "electronic communications" and otherwise. [rec. doc. 17, p. 23]. However, e-mails alone are not sufficient to meet general jurisdictional requirements. *See Renoir v. Hantman's Associates, Inc.*, 230 Fed.Appx. 357 (5th Cir. 2007) (Maryland company was not subject to personal jurisdiction in Texas sellers' breach of contract action, even though company had negotiated and contracted via phone, e-mail and mail with sellers); *Rectec, LLC v. Allied Erecting & Dismantling Co., Inc.*, 2008 WL 2067031 (E.D. La. May 14, 2008) (telephone calls and e-mails between defendant's president and plaintiff's manager for the purpose of contract negotiation and formation were inadequate to establish minimum contacts); *Casas v. Northrop Grumman Ship Systems, Inc.*, 533 F.Supp.2d 707 (S.D. Tex. 2008)

(defendant's exchange of phone calls, e-mails and correspondence with individuals in Texas was insufficient for general jurisdiction); *Drive Financial Services, LP v. Ginsburg*, 2007 WL 2084113 (N.D. Tex. July 19, 2007) (mere existence of two e-mails sent with Texas phone numbers falls short of the continuous and systematic contacts necessary for a sweeping exercise of jurisdiction).

Here, I do not find that general jurisdiction exists. Plaintiff has not met his burden of showing that Morrison had continuous and systematic contacts with the state of Louisiana. A few e-mails sent to Louisiana are simply not the continuous and systematic contacts with the state that are sufficient to support the exercise of general jurisdiction over Morrison. Thus, this argument lacks merit, and this Court cannot exercise general personal jurisdiction over Morrison.

### *Specific Jurisdiction*

Next, plaintiff asserts that Morrison's actions and statements in, or directed to, Louisiana give rise to specific jurisdiction. Plaintiff asserts causes of action against Morrison for: defamation, extortion, tortious damage to, and interference with, personal and real/immovable property rights and interests, intentional infliction of emotional distress, and civil conspiracy. Specifically, plaintiff asserts

that Morrison's purposeful contacts with Louisiana, include Morrison's payments

for Mrs. Dietz's Louisiana lawyers; his payments for Mrs. Dietz's travel to

Louisiana to remove the boys from school; his physical presence in Louisiana

when the decision was made to remove the boys from Louisiana to Mexico; his

sending of e-mails containing allegedly defamatory statements to Louisiana

residents; his phone call to Mr. Dietz's mother; his sending of correspondence to

the boys' school, and his "hardball" actions specifically intended to cause harm

and humiliation to Mr. Dietz.

The district court's exercise of specific personal jurisdiction is appropriate

only when the nonresident defendant's contacts with the forum state arise from, or

are directly related to, the cause of action. *Gundle Lining*, 85 F.3d at 205 (*citing*

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104

S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984)). To exercise specific personal

jurisdiction, the court must examine the relationship among the defendant, the

forum, and the litigation to determine whether maintaining the suit offends

traditional notions of fair play and substantial justice. *Id*. at 205.

The Fifth Circuit, in *Seiferth v. Helicopteros Atuneros, Inc*., 472 F.3d 266,

275 (5th Cir. 2006), held that specific personal jurisdiction is a claim-specific

inquiry, and that a plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim. The Fifth Circuit specifically held that if a defendant does not have enough contacts to justify the exercise of general jurisdiction, the Due Process Clause prohibits the exercise of jurisdiction over any claim that does not arise out of, or result from, the defendant's forum contacts. *Id*. at 274-275.

Since the undersigned has found that Morrison's contacts with Louisiana were not "continuous and systematic contacts", and that, therefore, this Court cannot exercise "general" personal jurisdiction over Morrison, each of the plaintiff's claims against Morrison must be analyzed separately in order to determine whether or not this court can exercise "specific" jurisdiction over each separate claim, based on Morrison's contacts with Louisiana relating to that claim.

### ***Defamation***

In Louisiana, the elements of a defamation action are "(1) defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied; and (5) resulting injury." *Young v. Equifax Credit Information Services Inc*., 294 F.3d 631, 638 (5th Cir. 2002) (*citing Cangelosi v. Schwegmann Bros. Giant Super Markets*, 390 So.2d 196, 198 (La. 1980)).

When a nonresident defendant commits an act outside the state that causes tortious injury within the state, that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state to exercise personal specific jurisdiction. *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 628 (5th Cir. 1999).

"A non-resident's mere communications into Louisiana" have been held to constitute "acts or omissions" for purposes of LSA-R.S. 13:3201(3). *Denmark v. Tzimas*, 871 F.Supp. 261, 268 (E.D. La. 1994) (*citing Kempe v. Ocean Drilling & Exploration Co.*, Civ. A. No. 86-891, 1987 WL 11163, at *1 (E.D.La. May 14, 1987). In addition, Louisiana's long-arm statute is to be liberally construed in favor of the exercise of jurisdiction. *Kempe* at *1; *Robinson v. Vanguard Ins. Co.*, 468 So.2d 1360, 1365 (La.App. 1st Cir.1985). For these reasons, " 'Louisiana courts have consistently found its long arm statute applicable, and constitutionally permissible, where a single act in Louisiana, by a person or thing for which the non-resident tortfeasor is responsible, contributes to the injury.' " *Kempe* (*citing Simon v. United States*, 644 F.2d 490, 407 n. 10 (5th Cir. 1981)).

In *Kempe*, the court held that wire and telephone communications into Louisiana by a nonresident constituted "acts or omissions" sufficient to confer personal jurisdiction under R.S. 13:3201(3). *Id.* at *2; *see also Aucoin v. Hanson*,

207 So.2d 834 (La. App. 3rd Cir. 1968) (nonresident subjected to Louisiana personal jurisdiction on the basis of a telephone call from out of state into Louisiana initiating a transaction). Similarly, in *Brown v. Flowers Industries, Inc*., 688 F.2d 328, 332 (5th Cir. 1982), the court held that the plaintiffs carried their burden of establishing specific jurisdiction where jurisdiction was predicated on one defamatory long-distance telephone call that caused them injury in Mississippi.

The undersigned has reviewed the e-mails sent from the defendant to Mr. Dietz and his parents in Louisiana, as well as the telefax communication sent by the defendant to the St. Peter School in Gueydan, Louisiana. The e-mails and letter refer to pending felony charges in Mexico against Mr. Dietz and refer to Mr. Dietz as an "international fugitive". Clearly, these are "defamatory" words which were "published" into Louisiana. Whether the statements are true or not is beyond this analysis. Since there were defamatory statements made about Mr. Dietz, published into Louisiana by e-mail and a telefax communication, specific personal jurisdiction exists as to this claim.

## _Intentional infliction of emotional distress_

In Louisiana, the three elements of an intentional infliction of emotional distress claim are: (1) the conduct of the defendant was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain, or substantially certain, to result from his conduct. _White v. Monsanto Co._, 585 So.2d 1205, 1209 (La. 1991); _see also Bourgeois v. Curry_, 2005-0211, p. 14 (La. App. 4 Cir. 12/14/05); 921 So.2d 1001, 1010 (_citing Lawson v. Straus_, 98-2096, p. 8 (La. App. 4 Cir. 12/8/99); 750 So.2d 234, 240.

In _Harris v. H20 Spa and Salon,_ 2007 WL 2571937 (E.D.La. Aug. 31, 2007), the Court set out Louisiana law on this subject as follows:

> To succeed on this claim, [plaintiff] must show: (1) that the alleged conduct was extreme and outrageous; (2) that the alleged emotional distress suffered by him was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. _White v. Monsanto,_ 585 So.2d 1205, 1209 (La.1991). In order to show that the defendants' conduct was extreme or outrageous, the plaintiff must show that the defendants' conduct was outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, to be regarded as atrocious, and utterly intolerable in a civilized community. _Nicholas v. Allstate,_ 765 So.2d 1017, 1022 (La.2000). Liability does not extend to mere

insults, indignities, threats, annoyances, petty oppressions or other trivialities. *White,* 585 So.2d at 1209. Persons must necessarily be expected to be hardened to a certain amount of rough language and occasional acts that are definitely inconsiderate and unkind. *Id.* . . . "Conduct which, viewed as an isolated incident, would not be outrageous or would not be likely to cause serious damage, can become such when repeated over a period of time." *Id.* ( *citing* Restatement (Second) of Torts § 46, Comment (j) (noting that both the intensity and the duration of the distress are factors to be considered in determining whether a pattern of conduct is actionable)).

*Id.* at 4.

A review of the e-mails, telefaxed letter and the alleged phone calls to plaintiff's mother compels the undersigned to conclude that the plaintiff has failed to make a *prima facie* case of specific jurisdiction on this claim. Quite simply, while the e-mails and letter may be defamatory (and thus serve as a basis for this Court to exercise specific jurisdiction over the defendant on that claim), the e-mails and telefaxed letter are not so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, to be regarded as atrocious, and utterly intolerable in a civilized community. *Nicholas,* 765 So.2d at 1022.

Accordingly, the undersigned finds that these communications are insufficient to provide a basis for this Court to exercise specific jurisdiction over the defendant on this claim.

## *Extortion*

The plaintiff claims that the defendant, Morrison, attempted to extort property from him by threatening "hardball" tactics including attempting to collect alleged arrearages in child support, attorney fees and certain property which Morrison alleges that his sister, Mrs. Dietz, is entitled to retain. Again, the undersigned has reviewed the e-mail communications in which these alleged extortionate threats are contained, and finds no extortionate threats contained therein.

The plaintiff, in his petition and in his memorandum opposing the motion to dismiss, has failed to set out exactly what he means by the term "extortion".[1] In Louisiana, the term most often used for traditional extortionate conduct is "duress". The Fifth Circuit, interpreting Louisiana law, has noted that duress exists where either "a person physically compels conduct" or "a person makes an improper threat that induces a party who has no reasonable alternative to manifest his assent." *Sanders v. Washington Mut. Home Loans, Inc. ex rel. Washington*

---

[1] LA. REV. STAT. ANN § 14:66 defines extortion as "the communication of threats to another with the intention thereby to obtain anything of value or any acquittance, advantage, or immunity of any description." The threat of legal action is not extortion. *State v. Conradi*, 60 So. 16 (La. 1912).

*Mut. Bank,* 248 Fed.Appx. 513, 516-517 (5th Cir. 2007) (*citing Comeaux v. Entergy Corp*., 734 So.2d 105, 107 (La. App. 5 Cir. 1999)).

However, the threat of doing a lawful act, or the threat of exercising a right, does not constitute duress under Louisiana law. LA. CIV. CODE ANN. art. 1962. *See also Comeaux* ,734 So.2d at 107; *see also Southmark Properties. v. Charles House Corp*., 742 F.2d 862, 876 (5th Cir.1984) ( "[I]t is the established rule that it is not duress to institute or threaten to institute civil suits, or take proceedings in court . . . at least where the threatened action is made in good faith. . . ."). In Louisiana, it is not a tortious act to do that which one has a legal right to do.

A review of the content of the e-mails shows that the defendant was attempting to compromise and settle outstanding claims of his sister against Mr. Dietz. The only "threats" made by Morrison were his "threats" to precede with legal action and/or his filing of complaints with Bar Associations in those states where Mr. Dietz was licensed to practice law. These "threats" are not actionable since Mr. Morrison was simply exercising a right which he, or his sister, had.

Accordingly, this Court cannot exercise specific jurisdiction over the defendant, Morrison, for this claim.

## _Interference with personal and real/immovable property rights and_
## _interests_

The plaintiff complains that Morrison has interfered with certain personal and real property rights belonging to the plaintiff.  Is unclear, from the pleadings filed herein, exactly what personal and real property rights that the plaintiff is referring to.  From a review of the e-mails, it appears that the plaintiff is complaining of interference with certain alleged rights that he has with regard to real property in Mexico and with some personal property also located in Mexico.

Again, in order to determine whether or not the court can exercise specific jurisdiction over this claim, the claims must be based on specific acts committed by the defendant in Louisiana, or which cause harm in Louisiana.  A review of the e-mails submitted shows that certain personal property is mentioned, as well as certain real property in Mexico.  The undersigned concludes that Mr. Dietz alleges that it is his rights in this property with which the defendant allegedly interfered.[2]

Again, a review of the e-mails shows that the reference to the real and personal property allegedly belonging to Mr. Dietz was made in the context of attempting to settle child support and alimony payments which Morrison alleged that Mr. Dietz owed to Mrs. Dietz.  Again, the only "threats" made were the

---

[2]No property, moveable or immoveable, is located in Louuisiana.

institution of collection proceedings in court. There is no indication of any extrajudicial attempt to seize any property or collect any monies.

Accordingly, since these e-mails do not disclose a tortious act committed in Louisiana, harm caused in Louisiana or that the property affected is located in Loouisiana, this court cannot exercise specific jurisdiction over this claim.

### *Civil conspiracy*

For those reasons set out above, the undersigned has explained why this court cannot exercise personal jurisdiction over the defendant, Morrison, based on the contacts which is sister (and alleged co-conspirator) had with Louisiana.

Louisiana law does not recognize an independent cause of action for civil conspiracy. Rather, the Louisiana Civil Code provides that "He who conspires with another person to commit an intentional or willful act is answerable, *in solido*, with that person, for the damage caused by such act." LA. CIV. CODE art. 2324 A.

Thus, the actionable element of a civil conspiracy claim is not the conspiracy itself; rather, it is the tort that the conspirators agree to perpetrate and actually commit in whole or in part. *Thomas v. North 40 Land Development, Inc.*, 2004-0610, p. 23 (La. App. 4 Cir. 1/26/05); 894 So.2d 1160, 1174 (*citing Ross v. Conoco, Inc.,* 828 So.2d 546, 552 (La. 2002). Solidary liability among individuals

for defamatory statements is contingent upon proof of a conspiracy among them to defame the plaintiff. *Trentecosta v. Beck*, 96-2388 (La. 10/21/97); 703 So.2d 552, 558.

The undersigned has recommended that this court exercise specific personal jurisdiction over the defendant, Morrison, on the plaintiff's claim for defamation. It follows, that this court should also exercise specific personal jurisdiction over the defendant, Morrison, for the alleged conspiracy to defame. If this court can exercise specific personal jurisdiction over the defendant, Morrison, for defamation based on the e-mails which he sent into the State of Louisiana, it follows that this Court can exercise specific personal jurisdiction over the defendant, Morrison, for the alleged conspiracy to commit defamation.

However, since the actionable claim in a civil conspiracy is the tort, and not the conspiracy itself, this Court does not have specific personal jurisdiction over the defendant Morrison for any other alleged civil conspiracy claim. Simply stated, if this Court cannot exercise specific personal jurisdiction over the defendant for the tort itself, it cannot exercise specific personal jurisdiction over the defendant for conspiracy to commit that tort.

## Conclusion

Accordingly, **IT IS RECOMMENDED** that the motion to dismiss be **GRANTED IN PART AND DENIED IN PART.** Specifically, **IT IS RECOMMENDED** that this Court **deny** the motion to dismiss on the claims by the plaintiff against the defendant, Morrison, for defamation and for civil conspiracy to defame the plaintiff. **IT IS FURTHER RECOMMENDED** that the court **grant** the motion to dismiss for lack of personal jurisdiction against the defendant, Morrison, on all other claims.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc.72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE**

**DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME**

**AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED**

**PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE**

**LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT,**

**EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED*

*SERVICES AUTOMOBILE ASSOCIATION*, **79 F.3D 1415 (5TH CIR. 1996).**

Signed September 24, 2008, at Lafayette, Louisiana.

_C. Michael Hill_____
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE