RECEIVED

AUG 2 7 2009

TONY R. MOORE  CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| JOHN FORD DIETZ | CIVIL ACTION NO. 08-0521 |
| VERSUS | JUDGE DOHERTY |
| ANNE BENNETT MORRISON DIETZ | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

Pending before this Court is the Supplemental Report and Recommendation issued by the magistrate judge, in which the magistrate judge recommends the Motion to Dismiss Based on Lack of Personal Jurisdiction filed by defendant, Richard Morrison ("Morrison"), be granted in part and denied in part [Doc. 44]. Mr. Morrison and plaintiff John Ford Dietz filed Objections to Magistrate Judge Hill's Supplemental Report [Docs. 45 & 46]. After review of the record and the objections filed by the parties, the recommendation of the magistrate judge is AFFIRMED IN PART AND REVERSED IN PART. For the following reasons, the motion to dismiss is GRANTED IN PART AND DENIED IN PART.

## I.     Factual and Procedural Background

The issue for consideration before this Court is whether this Court has personal jurisdiction over defendant Richard Morrison. Mr. Morrison is a resident of California.[1] On September 24, 2008, the magistrate judge issued a Report and Recommendation, wherein the magistrate judge

---

[1] The factual and procedural background of this matter is set forth by the magistrate judge in his original Report and Recommendation and will not be re-stated here. For the sake of clarity, however, this Court notes the plaintiff in this matter is the ex-husband of defendant Anne Morrison Dietz, and defendant Richard Morrison is Mrs. Dietz's brother.

found the following: (1) this Court does not have general jurisdiction over Morrison; and (2) this Court has specific personal jurisdiction over plaintiff's defamation and civil conspiracy to commit defamation claims against Mr. Morrison, but does not have specific personal jurisdiction over plaintiff's claims against Mr. Morrison for extortion, intentional infliction of emotional distress, and tortious damage to, and interference with, personal and real/immovable property. The magistrate judge also found the "conspiracy theory of jurisdiction" does not grant this Court personal jurisdiction over Mr. Morrison [Doc. 27]. Both plaintiff and Mr. Morrison filed objections to the magistrate judge's original Report [Docs. 31 & 33].

In a Memorandum Ruling and Order issued on December 19, 2008 [Docs. 41 & 42], this Court affirmed the magistrate judge's findings that this Court does not have jurisdiction over Mr. Morrison under the "conspiracy theory of jurisdiction," and this Court does not have general jurisdiction over Mr. Morrison. However, because this Court could not determine whether a full evidentiary hearing had been conducted before the magistrate judge – which determined the standard to be applied to the issue of specific personal jurisdiction – this Court remanded the matter to the magistrate judge for clarification as to the following: (1) Whether the magistrate judge conducted a full evidentiary hearing in connection with the motion to dismiss; and (2) what standard the magistrate judge actually employed in reviewing the motion to dismiss. After clarification of the foregoing issues and consideration of the applicable law regarding the standard to be applied, this Court ordered the magistrate judge to issue a Supplemental Report and Recommendation, applying the appropriate standard of review in light of the clarification.

On August 6, 2009, the magistrate judge issued the instant Supplemental Report and Recommendation [Doc. 44], wherein the magistrate judge clarifies a full evidentiary hearing was *not*

2

conducted in the proceedings below. Both plaintiff [Doc. 45] and Mr. Morrison [Doc. 46] have filed Objections to the magistrate judge's Supplemental Report and Recommendation.

## I. Legal Analysis - Objections to Magistrate's Report and Recommendation

### A. Evidentiary Hearing

In his Supplemental Report and Recommendation, after the magistrate judge's personal review of the transcript in question, the magistrate judge concluded the hearing conducted on June 10, 2008 in connection with Mr. Morrison's motion to dismiss for lack of personal jurisdiction was not a full evidentiary hearing. As will be discussed in more detail hereinbelow, this finding dictates the standard to be applied to the instant motion, and requires that plaintiff set forth only a *prima facie* case of personal jurisdiction with respect to all claims pled in plaintiff's petition. Mr. Morrison objects to the magistrate judge's characterization of the proceedings below, contending a full evidentiary hearing was, in fact, conducted. After a review of the Supplemental Report and Recommendation and the objections filed by the parties, this Court ADOPTS the finding of the magistrate judge that the hearing conducted below was not a full evidentiary hearing and concludes the magistrate judge applied the appropriate standard to the instant motion.

### B. Specific Personal Jurisdiction

The district court's exercise of specific personal jurisdiction is appropriate only when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action asserted. *Gundle Lining*, 85 F.3d at 205 (*citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984)). To exercise specific personal jurisdiction, the court must examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair

play and substantial justice. *Id.* at 205.

The Fifth Circuit, in *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 (5th Cir. 2006), held specific personal jurisdiction is a *claim-specific inquiry*, and a plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction *with respect to each claim*. The Fifth Circuit specifically held if a defendant does not have enough contacts to justify the exercise of *general* jurisdiction, the Due Process Clause prohibits the exercise of *specific* jurisdiction over any claim that does not arise out of, or result from, the defendant's forum contacts. *Id.* at 274-275.

Because this Court agrees with the magistrate judge's finding that *general* jurisdiction does not exist in this case, each of the plaintiff's claims against Mr. Morrison must be analyzed separately in order to determine whether or not this Court can exercise *specific* jurisdiction over Mr. Morrison with respect to each separate claim, based on Mr. Morrison's actual contacts with Louisiana *as they relate to each claim*.

Because the magistrate judge has clarified he did not conduct a full evidentiary hearing in the proceedings below, the plaintiff need only present a *prima facie* case for personal jurisdiction; proof by a preponderance of the evidence is not required. Therefore, with respect to the instant motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists. *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989), *citing D.J. Investments v. Metzeler Motorcycle Tire Agent Gregg,* 754 F.2d 542, 545-46 (5th Cir.1985) (emphasis added) (citations omitted). *See also Walk Haydel & Associates, Inc. v. Coastal Power Production Co.*, 517 F.3d 235,

241 (5th Cir. 2008) (court should not act as a fact finder and must construe all disputed facts in the plaintiff's favor and consider them along with the undisputed facts; plaintiff is required to present only a prima facie case for personal jurisdiction). *See also Latshaw v. Johnston*, 167 F.3d 208, 213 (5th Cir. 1999) (in no-evidentiary-hearing situation, court is constrained to accept plaintiff's allegations as true; while additional testimony or evidence adduced at hearing or trial might mandate different conclusion, for purposes of jurisdiction, all plaintiff need show is *prima face* case for jurisdiction).

## C. Analysis of Each Claim

This Court notes the magistrate judge applied the Louisiana substantive law with respect to each claim in assessing whether this Court has specific personal jurisdiction over Morrison with respect to that claim. Neither party disputes Louisiana substantive law applies. Therefore, this Court will accept for purposes of this ruling only that Louisiana substantive law applies with respect to each claim.

### 1. Intentional Infliction of Emotional Distress

In his complaint, plaintiff alleges Mr. Morrison is liable for intentional infliction of emotional distress based on several emails and other communications sent by Mr. Morrison to both plaintiff and plaintiff's father that contain false statements, including the following, paraphrased examples: (1) plaintiff has multiple felony arrest warrants for him in Mexico; (2) plaintiff's ability to practice law is or will be in jeopardy; (3) plaintiff has no parental rights with regard to his minor children; (4) plaintiff has failed in his legal obligations and is tens of thousands of dollars in arrears in child support and/or alimony payments; and 5) plaintiff's alleged arrearages would likely qualify as a federal crime. Additionally, plaintiff contends Mr. Morrison threatened to block the plaintiff, and

the plaintiff's parents, from having access to the children. Plaintiff contends the foregoing emails and other communications were sent for the purpose of intentionally inflicting emotional distress.

In his Supplemental Report and Recommendation, the magistrate judge concludes the foregoing allegations are sufficient to establish personal jurisdiction over Mr. Morrison.[2]

Under Louisiana law, there are three elements of a claim for intentional infliction of emotional distress: (1) the conduct of the defendant was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain, or substantially certain, to result from his conduct. *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991); *see also Bourgeois v. Curry*, 921 So.2d 1001, 1010 (La. App. 4th Cir. 2005) (*citing Lawson v. Straus*, 750 So.2d 234, 240 (La. App. 4th Cir. 1999).

In *Harris v. H20 Spa and Salon,* 2007 WL 2571937 (E.D.La. Aug. 31, 2007), the district court for the Eastern District of Louisiana, citing controlling Louisiana law, detailed the framework for considering a claim for intentional infliction of emotional distress:

> To succeed on this claim, [plaintiff] must show: (1) that the alleged conduct was extreme and outrageous; (2) that the alleged emotional distress suffered by him was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. *White v. Monsanto,* 585 So.2d 1205, 1209 (La.1991). In order to show

---

[2] In his original Report and Recommendation, the magistrate judge found the emails, letter, and phone calls were *not* sufficient to subject Mr. Morrison to jurisdiction in this state, finding they were "not so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, to be regarded as atrocious, and utterly intolerable in a civilized community." However, in response to that Report and Recommendation, plaintiff objected, arguing the magistrate judge had *factually* erred in failing to consider his claim for intentional infliction of emotional distress included Mr. Morrison's threats that plaintiff and plaintiff's parents would not have access to the children. Additionally, plaintiff contended the magistrate judge erred *as a matter of law* in concluding the forgoing communications are insufficient to provide a basis for this Court to exercise specific personal jurisdiction over Mr. Morrison on this claim. After consideration of the Objections, the magistrate judge concluded he had erred and finds in his Supplemental Report and Recommendation that this Court has specific personal jurisdiction over Mr. Morrison in connection with plaintiff's claim for intentional infliction of emotional distress.

that the defendants' conduct was extreme or outrageous, the plaintiff must show that the defendants' conduct was outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, to be regarded as atrocious, and utterly intolerable in a civilized community. *Nicholas v. Allstate,* 765 So.2d 1017, 1022 (La.2000). Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions or other trivialities. *White,* 585 So.2d at 1209. Persons must necessarily be expected to be hardened to a certain amount of rough language and occasional acts that are definitely inconsiderate and unkind. *Id.* . . . "Conduct which, viewed as an isolated incident, would not be outrageous or would not be likely to cause serious damage, can become such when repeated over a period of time." *Id.* ( *citing* Restatement (Second) of Torts § 46, Comment (j) (noting that both the intensity and the duration of the distress are factors to be considered in determining whether a pattern of conduct is actionable)).

*Id.* at 4.[3]

Mr. Morrison objects to the findings of the magistrate judge in the Supplemental Report and Recommendation, contending the following:

> . . there is absolutely no evidence that Richard Morrison himself at any place and time personally prevented plaintiff or his parents from having access to the children so as to form the basis for such a tort. The most that can be said in support of such a claim is that he helped his sister recover the children who the plaintiff wrongful took from her in Mexico as found by this very Court in Dietz v. Dietz, cited *supra.* Helping his sister exercise her lawful rights as declared by this very Court can in no way shape or form be denominated actions cognizable in tort.

Pursuant to well-established Fifth Circuit law, at this stage of the litigation, the court cannot act as a fact finder and must construe all disputed facts in the plaintiff's favor, as the plaintiff is required to present only a *prima facie* case for personal jurisdiction. Thus, this Court is constrained to accept plaintiff's allegations as true. While additional testimony or evidence adduced at a hearing at the Rule 12(b)(6), summary judgment, or trial stage might mandate a different conclusion, for purposes of jurisdiction, all plaintiff need show is *prima face* case for jurisdiction. *See Walk Haydel,*

---

[3] Although the *Harris* case is not binding on this Court, it is cited because of its recent survey of controlling Louisiana jurisprudence on the issue.

517 F.3d at 241; *Latshaw*, 167 F.3d at 213.

Considering the foregoing, the objections of Mr. Morrison are OVERRULED, and the recommendation of the magistrate judge is AFFIRMED. Considering the foregoing, this Court concludes the plaintiff has set forth a *prima facie* claim of intentional infliction of emotional distress for purposes of personal jurisdiction, and defendant's motion to dismiss this claim for lack of personal jurisdiction is DENIED.

### 2. Defamation

In his original Report and Recommendation, the magistrate judge concluded this Court has personal jurisdiction over Mr. Morrison in connection with plaintiff's defamation claim. Both parties filed objections to this finding. In his Supplemental Report and Recommendation, the magistrate judge simply adopts his previous recommendation with no modifications. The plaintiff does not assert new objections; Mr. Morrison simply re-urges his previous objections.

In Louisiana, the elements of a defamation action are "(1) defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied; and (5) resulting injury." *Young v. Equifax Credit Information Services Inc.*, 294 F.3d 631, 638 (5th Cir. 2002), *citing Cangelosi v. Schwegmann Bros. Giant Super Markets*, 390 So.2d 196, 198 (La. 1980). In Louisiana, there is also a body of law addressing the issue of personal jurisdiction over non-resident defendants who direct wire and telephone communications to the state. When a nonresident defendant commits an act outside the state that causes tortious injury within the state, that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state to exercise personal specific jurisdiction. *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 628 (5th Cir. 1999). "A non-resident's mere communications into Louisiana" have been held to constitute "acts or

8

omissions" for purposes of LSA-R.S. §13:3201(3). *See, e.g., Denmark v. Tzimas*, 871 F.Supp. 261, 268 (E.D. La. 1994) (*citing Kempe v. Ocean Drilling & Exploration Co.*, Civ. A. No. 86-891, 1987 WL 11163, at *1 (E.D.La. May 14, 1987). In addition, Louisiana's long-arm statute is to be liberally construed in favor of the exercise of jurisdiction. *Kempe* at *1; *Robinson v. Vanguard Ins. Co.*, 468 So.2d 1360, 1365 (La. App. 1st Cir. 1985). For these reasons, "Louisiana courts have consistently found its long arm statute applicable, and constitutionally permissible, where a single act in Louisiana, by a person or thing for which the non-resident tortfeasor is responsible, contributes to the injury." *Kempe* (*citing Simon v. United States*, 644 F.2d 490, 407 n.10 (5th Cir. 1981) (court held wire and telephone communications into Louisiana by a nonresident constituted "acts or omissions" sufficient to confer personal jurisdiction under R.S. 13:3201(3)). *See also Aucoin v. Hanson*, 207 So.2d 834 (La. App. 3rd Cir. 1968) (nonresident subjected to Louisiana personal jurisdiction on the basis of a telephone call from out of state into Louisiana initiating a transaction); *Brown v. Flowers Industries, Inc.*, 688 F.2d 328, 332 (5th Cir. 1982) (court held plaintiffs carried their burden of establishing specific jurisdiction where jurisdiction was predicated on one defamatory long-distance telephone call that caused them injury in Mississippi).

Mr. Morrison objects to the Supplemental Report and Recommendation, asserting the same objections he asserted to the original Report and Recommendation. In essence, Mr. Morrison argues at a previously-conducted trial between the same parties on the issue of custody of plaintiff's and Mrs. Dietz's minor children – a matter that was tried before the magistrate judge at the consent of the parties – the Court found as a matter of fact on July 28, 2006, a Mexican court issued a criminal arrest warrant for plaintiff for "Nonfulfillment of Family Assistance Obligations and Arbitrary Exercise of His Own Right Against Anne Dietz and A.J.M.D.." According to Mr. Morrison, this

9

arrest warrant shows as of the time of trial in the custody case, there was an outstanding arrest warrant for plaintiff in Mexico for taking a minor child out of the country. Therefore, Mr. Morrison contends at the time he sent the challenged communications to plaintiff, the statements that plaintiff was a fugitive from a warrant issued in another country and was an "international fugitive" were true. Considering the foregoing, Mr. Morrison objects to the magistrate's judge's factual finding that the foregoing statements are defamatory and further contends the magistrate judge committed an error of law in determining it was beyond his authority to analyze the truth or falsity of the challenged statements in considering the jurisdictional issue.

After consideration of the objections of the parties, this Court concludes, based on the contacts actually considered by the magistrate judge and the applicable law, such contacts are sufficient to establish specific personal jurisdiction over Morrison in connection with the plaintiff's defamation claim. First, because the magistrate judge did not conduct a full evidentiary hearing – despite Mr. Morrison's characterization of the hearing – the plaintiff need only establish a *prima facie* claim for defamation in order for this Court to exercise personal jurisdiction over Mr. Morrison in connection with that claim. In alleging Mr. Morrison has falsely accused him of being an international fugitive with pending felony charges, the plaintiff has presented a *prima facie* claim of defamation, inasmuch as plaintiff denies he is a fugitive and that there are pending felony charges against him. This Court is constrained to accept plaintiff's version of the facts as true. Notwithstanding the foregoing, however, whether the defamation claim can survive a Rule 12(b) motion to dismiss or motion for summary judgment is an issue not before the Court at this time. Indeed, the facts as presented by Mr. Morrison in his objections may well operate as a defense or other legal bar to plaintiff's defamation claim. However, in the procedural context before the Court

10

at this time, this Court concludes plaintiff has demonstrated the contacts actually considered by the magistrate judge in connection with the defamation claim are sufficient to subject Mr. Morrison to the personal jurisdiction of this Court.

Considering the foregoing, Mr. Morrison's objections are overruled, and the magistrate judge's recommendation with respect to the defamation claim is AFFIRMED, for the reasons stated herein. Therefore, Mr. Morrison's motion to dismiss plaintiff's defamation claim for lack of personal jurisdiction is DENIED.

### 3. Extortion

The plaintiff alleges Mr. Morrison attempted to extort property from him by threatening "hardball" tactics including attempting to collect alleged arrearages in child support, attorney fees and certain property located in Mexico which Morrison alleges his sister, the plaintiff's ex-wife, is entitled to retain. In his Supplemental Report and Recommendation, the magistrate judge relies on the reasons set forth in his original Report and Recommendation, wherein the magistrate judge reviewed the e-mail communications in which these alleged extortionate threats are contained, and found no extortionate threats contained therein. The magistrate judge also noted the plaintiff fails to allege with specificity what he means by "extortion." The magistrate judge reached this conclusion in both his original and Supplemental Reports and Recommendation.

La. Rev. Stat. §14:66 defines "extortion" in pertinent part as follows:

Extortion is the communication of threats to another with the intention thereby to obtain anything of value or any acquittance, advantage, or immunity of any description. The following kinds of threats shall be sufficient to constitute extortion:

(1) A threat to do any unlawful injury to the person or property of the individual threatened or of any member of his family or of any other person held dear to him;

(2) A threat to accuse the individual threatened or any member of his family or any other person held dear to him of any crime;

(3) A threat to expose or impute any deformity or disgrace to the individual threatened or to any member of his family or to any other person held dear to him;

(4) A threat to expose any secret affecting the individual threatened or any member of his family or any other person held dear to him;

(5) A threat to do any other harm.

La. Rev. Stat. §14:66. However, the magistrate pointed out Louisiana law specifically holds a threat of legal action is *not* extortion. *State v. Conradi*, 60 So. 16 (La. 1912).[4] The magistrate judge set forth the applicable law as follows:

> In Louisiana, the term most often used for traditional extortionate conduct is "duress." The Fifth Circuit, interpreting Louisiana law, has noted that duress exists where either "a person physically compels conduct" or "a person makes an improper threat that induces a party who has no reasonable alternative to manifest his assent." *Sanders v. Washington Mut. Home Loans, Inc. ex rel. WashingtonMut. Bank,* 248 Fed.Appx. 513, 516-517 (5th Cir. 2007) (*citing Comeaux v. Entergy Corp.,* 734 So.2d 105, 107 (La. App. 5 Cir. 1999)).
>
> **However, the threat of doing a lawful act, or the threat of exercising a right, does not constitute duress under Louisiana law. LA. CIV. CODE ANN. art. 1962.**[5] *See also Comeaux* ,734 So.2d at 107; *see also Southmark Properties. v. Charles House Corp.,* 742 F.2d 862, 876 (5th Cir.1984) ( "[I]t is the established rule that it is not duress to institute or threaten to institute civil suits, or take proceedings in court . . . at least where the threatened action is made in good faith. . . ."). In Louisiana, it is not a tortious act to do that which one has a legal right to do.[6]

---

[4] Despite the age of this case, plaintiff has cited to no legal authority indicating this case has been reversed, modified, or overruled. Ergo, the legal precepts contained in this case are presumed to still be good law.

[5] Article 1962 of the Louisiana Civil Code states:

> A threat of doing a lawful act or a threat of exercising a right does not constitute duress.

> A threat of doing an act that is lawful in appearance only may constitute duress.

La. Civ. Code art. 1962.

[6] *See* Report and Recommendation, Doc. 27, at pp. 18-19.

(emphasis added).

Finding the emails showed Mr. Morrison was attempting to compromise and settle the outstanding claims his sister has against the plaintiff, the magistrate judge found the only "threats" made by Mr. Morrison were his "threats'" to proceed with legal action and/or filing a complaint with the bar associations in those states where plaintiff, an attorney, is licensed to practice. The magistrate judge found these "threats" are not actionable, as Mr. Morrison was simply exercising a right he legally has.

The plaintiff filed objections to the magistrate judge's original and Supplemental Reports and Recommendation. In his original objection, the plaintiff contends his extortion claim includes "much additional facts not included in the limited listing provided by way of the Report and Recommendation." The plaintiff also contends Louisiana law defines extortion in a manner "much broader than stated in the Report and Recommendation."[7] Although the plaintiff did not define which additional contacts should be considered by the Court in his Objections to the magistrate judge's original Report and Recommendation, for the first time in his Objections to the magistrate judge Supplemental Report and Recommendation, the plaintiff includes the referenced "threats," which relate to withholding access to the children:

> "Mr. Morrison . . .sent other emails to Louisiana repeatedly indicating that, unless Mr. Dietz would "cooperate" by agreeing to provide money, personal property, and real property, Mr. Dietz and his family members would be persecuted in various ways, including, but not limited to, the loss of Mr. Dietz's ability to practice law and Mr. Dietz's exposure to alleged criminal conduct."

Emails then describing certain comments made by Mr. Morrison concerning restricted access to the children are set forth, including:

---

[7] Doc. 31 at p. 16.

(1)     September 7, 2007 email of Mr. Morrison: maliciously notes *Mrs. Morrison Dietz going to be resistant to let the boys have much access to their father*; acknowledges *Mrs. Morrison Dietz maliciously not allowing Albert and Angus to speak with their father by phone*;

(2)     September 14, 2007 email of Mr. Morrison – Mr. Morrison states to plaintiff's father that "*your own future with your grandchildren*" *is at risk*;

(3)     September 14, 2007 email of Mr. Morrison: *falsely and maliciously states Mr. Dietz has NO parental rights at the moment and any contact with his children is currently at Anne's sole discretion.*[8]

It is clear the magistrate judge did not consider the foregoing contacts, as it does not appear the plaintiff included them or referred to them specifically in the context of his extortion claim in prior briefing or his original Objections.

As for plaintiff's legal argument, plaintiff argues:

Extortion may be established by way of false or true statements and need only tend to expose one to humiliation or harm or otherwise exploit some fear. See LSA-R.S. 14:66; Burnham Broadcasting Co. v. Williams, 629 So.2d 1335 (La. Ct. App. 4 1993) ("Extortion " includes activities which tend to exploit fear of victim, and thus inducing party to give up any property right because of fear of economic loss qualifies as extortion); State v. Hingle, 677 So.2d 603 (La. Ct. App. 2 1996) ("extortion" is defined as communication of threats to another with intent thereby to obtain anything of value or advantage ; threat to accuse individual threatened or any member of his family of any crime shall be sufficient to constitute extortion).[9]

---

[8] Plaintiff contends the remaining threatening contacts, referenced in the plaintiff's opposition brief to the original motion to dismiss, are as follows:

The Louisiana purposeful contacts of Mr. Morrison related to the five tort causes of action include . . . (5) Mr. Morrison sending to at times as many as four (4) Louisiana residents the September 7, 2007, September 14, 2007, October 5, 2007, October 15, 2007, October 28, 2007, November 6, 2007, and December 3, 2007 emails full of false, defamatory, and malicious statements which individually and in combination constitute extortion under Louisiana law.

[9] Although there are certain allegations in the complaint that "a Mexican individual acting on behalf of Mr. Morrison and Mrs. Dietz" made certain threats against plaintiff, the plaintiff does not discuss these allegations in any detail in response to the instant motion to dismiss. Therefore, if these are the additional threats plaintiff is referring to in his objections, he has not sufficiently discussed these contacts so as to establish a *prima facie* case of extortion in connection therewith. Plaintiff's conclusory allegations in the complaint are not sufficient to establish a *prima facie* case of personal jurisdiction in connection with this motion.

As an initial matter, this Court finds the cases cited by plaintiff in both his objections to the original and Supplemental Reports and Recommendation do not actually support his argument herein. Specifically, in *Burnham Broadcasting Co . v. Williams*, the Louisiana state district court found the challenged activities constituted extortion under *federal* law, and, therefore, the court expressly "pretermit[ted] any discussion of whether the activities also qualified as extortion under state law." 629 So.2d at 1340. Therefore, the court specifically did not discuss whether the challenged activity violated the Louisiana statute addressing extortion. Second, in *State v. Hingle* – a Louisiana state court criminal case – the state district court ruling was limited to rejecting the defendant's argument urging the court to create a jurisprudential rule that recognizes the defense of extortion to the charge of public bribery. 677 So. 2d at 608. Although the court cited La. Rev. Stat §14:66, the court did not discuss the statute in any way that supports the plaintiff's argument in the instant case.

However, notwithstanding the foregoing, after consideration of the objections of the parties, this Court concludes the contacts alleged by the plaintiff in connection with his extortion claim – including the alleged threats made by Mr. Morrison that plaintiff and/or his parents would not be allowed access to his children – if he did not "cooperate" with Mr. Morrison and/or Mrs. Morrison Dietz, are sufficient to establish this Court's personal jurisdiction over Mr. Morrison in connection with this claim. Although the magistrate judge was clearly correct in his conclusion that the contacts he considered – the threats to report plaintiff to bar associations and Mr. Morrison's statements in the context of attempting to settle the litigation – are not actionable, and, therefore, do not constitution extortion as a matter of law, this Court concludes the alleged "threats" of Mr. Morrison in connection with the children are, potentially, actionable. Indeed, the threats involving the children

15

involve something of value to Mr. Dietz, and Mr. Morrison was allegedly attempting to exploit the fear of the plaintiff in making these alleged threats.

This Court does not know the current custody situation of the parties, and, specifically, whether one party has the right to restrict the access of the other parent to the children. The plaintiff alleges he should legally have access to the children, but such access was threatened. To the extent there are disputed facts concerning such access and even concerning threats related to such access, this Court must accept the facts as pled by the plaintiff. Therefore, on the face of the pleadings, this Court finds the plaintiff has made a *prima facie* showing of personal jurisdiction on the extortion claim. This Court makes no finding as to whether the plaintiff's extortion claim can survive a motion for summary judgment or trial stage of the litigation.

Considering the foregoing, this Court concludes the finding of the magistrate judge that this Court does not have personal jurisdiction over Mr. Morrison with respect to plaintiff's extortion claim is AFFIRMED IN PART AND REVERSED IN PART. To the extent plaintiff's claims of extortion are based on allegations Mr. Morrison attempted to extort property from plaintiff by threatening "hardball" tactics including attempting to collect alleged arrearages in child support, attorney fees and certain property located in Mexico which Mr. Morrison alleges his sister, the plaintiff's ex-wife, is entitled to retain, the magistrate judge's findings are AFFIRMED, and Mr. Morrison's motion to dismiss the foregoing claims is GRANTED, as the foregoing allegations do not constitute extortion as a matter of law. However, to the extent plaintiff's extortion claim is based on allegations Mr. Morrison threatened either plaintiff or plaintiff's parents with restricted access to plaintiff's children, this Court concludes such contacts are sufficient to establish personal jurisdiction over Mr. Morrison in this forum. Therefore, Mr. Morrison's motion to dismiss any such

claims is DENIED, as this Court concludes the plaintiff has presented a *prima facie* case of extortion with respect to such allegations.

### 4. Tortious Damage to, and Interference With, Personal and Real/Immovable Property

The plaintiff's allegations, of tortious damage to, and interference with, personal and real/immovable property, are unclear to this Court, as will be discussed in more detail below. The magistrate judge concluded in both his original and Supplemental Reports and Recommendation this Court does not have personal jurisdiction over defendant Morrison in connection with plaintiff's claim of tortious damage to, and interference with, real and/or immovable property.

The magistrate judge concluded Louisiana law does not recognize a discreet claim for tortious interference with property, and indeed, this Court was unable to discern any such claim based on its own research. Furthermore, as the magistrate judge noted in his original Report and Recommendation, it is unclear from the pleadings exactly what personal and real property rights the plaintiff is referring to. The magistrate judge reviewed certain emails and determined the plaintiff is complaining of interference with certain alleged rights he has with regard to real property in Mexico and with certain personal property also located in Mexico. The magistrate judge noted it appears Mr. Morrison, in an attempt to settle certain child support and alimony issues outstanding between the plaintiff and Mrs. Dietz, made reference to the foregoing real and personal property. Plaintiff alleges these "references" were "threats" made with regard to the property. However, as noted herein, the magistrate judge found the only "threats" made were the institution of collection proceedings in court to force plaintiff to pay back-child support and alimony due to plaintiff's ex-wife and "threats" to report the plaintiff to various bar associations. The magistrate judge found

there was no indication of any extrajudicial attempt to seize any of the property or to collect any monies. The magistrate judge also concluded because the emails in question do not disclose a tortious act committed in Louisiana, harm caused in Louisiana, or that the property affected was located in Louisiana, this Court does not have personal jurisdiction over Mr. Morrison in connection with this claim.

This Court agrees. Although plaintiff states in his objections to the magistrate judge's original Report and recommendation – adopted by reference in plaintiff's objections to the magistrate judge's Supplemental Report and Recommendation – plaintiffs' claim against Mr. Morrison "involve[s] other property," and the magistrate judge, therefore, erred factually in concluding the only property in question is real and personal property located in Mexico, plaintiff, however, does not indicate or identify what other property is at issue in connection with this claim, nor does he demonstrate the additional property to be considered is located in Louisiana. Considering the foregoing, this Court concludes the plaintiff's objections with respect to the property claim are without merit, and the magistrate judge's finding that this Court does not have specific personal jurisdiction over Mr. Morrison in connection with this claim is AFFIRMED. Therefore, Mr. Morrison's motion to dismiss plaintiff's claim for tortious damage to, and interference with, personal and real/immovable property for lack of personal jurisdiction is GRANTED.

### 5. Civil Conspiracy

The precise nature of plaintiff's claim for civil conspiracy is also unclear to this Court. The plaintiff makes numerous references in his complaint to Mr. Morrison engaging in a conspiracy with his co-defendant, Mrs. Dietz, including an allegation Mr. Morrison has been "assisting and conspiring with his sister to bring pressure to bear and/or exert leverage upon Plaintiff for the

18

purpose of obtaining unjust financial gain from him." The substance of the allegation appears to be

that Mr. Morrison and Mrs. Morrison Dietz have conspired to commit the underlying torts, that is,

plaintiff alleges both defendants have conspired to extort plaintiff, deprive him of property, inflict

emotional distress, and defame him.

As the magistrate judge noted in both his original and Supplemental Reports and

Recommendation, Louisiana law does not recognize an independent cause of action for civil

conspiracy. Rather, Article 2324 of the Louisiana Civil Code states "He who conspires with another

person to commit an intentional or wilful act is answerable, *in solido*, with that person, for the

damage cased by such act." La. Civ. Code art. 2324. Louisiana caselaw makes clear the actionable

element of a civil conspiracy claim is not the conspiracy itself; rather, it is the *underlying tort* the

conspirators agree to perpetrate and actually commit in whole or in part that is actionable. *Thomas*

*v. North 40 Land Development, Inc.*, 894 So.2d 1160, 1174 (La. App. 4th Cir. 1/26/05) (*citing Ross*

*v. Conoco, Inc.*, 828 So.2d 546, 552 (La. 2002)). With respect to the defamation claim specifically,

solidary liability among individuals for defamatory statements is contingent upon proof of a

conspiracy among them to defame the plaintiff. *Trentecosta v. Beck*, 703 So.2d 552, 558 (La. 1997).

In *Chrysler Credit Corp. v. Whitney Nat. Bank*, 51 F.3d 553, 557 (5th Cir. 1995), the Fifth

Circuit, applying Louisiana law and, specifically, Article 2324, discussed the nature of a civil

conspiracy allegation as follows:

> He who conspires with another person to commit an intentional or willful act is
> answerable, in solido with that person for the damage caused by such act. The
> unlawful act is tortious conduct. *Cust v. Item Co.*, 200 La. 515, 8 So.2d 361 (1942),
> *ovr'd in part, 9 to 5 Fashions Inc. v. Spurney*, 538 So.2d 228 (La.1989). The action
> is for damages caused by acts committed pursuant to a formed conspiracy, and all of
> the conspirators will be regarded as having assisted or encouraged the performance
> of those acts. *National Union Fire Ins. Co. v. Spillars*, 552 So.2d 627, 634

(La.Ct.App.1989), *writ denied,* 556 So.2d 61 (La.1990). The plaintiff must therefore prove an unlawful act and assistance or encouragement that amounts to a conspiracy. *Id.* This assistance or encouragement must be of such quality and character that a jury would be permitted to infer from it an underlying agreement and act that is the essence of the conspiracy. *See Silver v. Nelson,* 610 F.Supp. 505, 517 (E.D.La.1985).

The magistrate judge concluded because this Court has personal jurisdiction over Mr. Morrison in connection with plaintiff's claims for defamation and intentional infliction of emotional distress, this Court can exercise jurisdiction over Mr. Morrison in connection with plaintiff's "claims" for conspiracy to commit defamation and intentional infliction of emotional distress, but not for any other alleged civil conspiracy "claims." Both parties object to the magistrate judge's finding. The plaintiff objects to the magistrate judge's legal conclusion that civil conspiracy cannot exist as an independent viable legal "claim" without being coupled with a tort, arguing the "claim" of civil conspiracy is independently actionable. Plaintiff provides no legal support for his argument.

Mr. Morrison objects to the magistrate judge's finding on grounds this Court should not exercise jurisdiction over "claims" for civil conspiracy to commit defamation and intentional infliction of emotional distress, because the underlying causes of action for those torts are not actionable.

After consideration of the parties' objections, this Court concludes the issue has been improperly framed by the parties. As the magistrate judge pointed out, Louisiana law does not recognize an independent "claim" or "cause of action" for civil conspiracy. Rather, Article 2324 is merely a legal vehicle by which a co-conspirator – "[h]e who conspires with another person" – can be held solidarily liable with the main perpetrator of an illegal act for the damage caused by the act. Thus, Article 2324 does not provide the basis for a "claim" for civil conspiracy, as argued by the plaintiff. The magistrate judge correctly noted there is no separate "claim" or "cause of action" for

civil conspiracy under this code article.

Thus, the issue before this Court is not whether Article 2324 creates a "cause of action" or "claim" for civil conspiracy – it does not -- but whether Article 2324 applies such that *another person* -- in this case, Mrs. Dietz – could be held to be solidarily liable with Mr. Morrison in connection with the underlying torts allegedly committed – here, defamation, intentional infliction of emotional distress, and extortion. Again, plaintiff need only present a *prima facie* case for the alleged tort in order for this Court to conclude Article 2324 might apply, and conclusory allegations contained in the pleadings are not sufficient.

After consideration of the briefs of the parties, this Court concludes the plaintiff has presented a *prima facie* case as to the applicability of Article 2324 of the Louisiana Civil Code in connection with the underlying torts of defamation, intentional infliction of emotional distress, and certain aspects of plaintiff's extortion claim, as discussed herein. In his opposition brief to the instant motion to dismiss, the plaintiff contends that in certain allegedly defamatory emails, Mr. Morrison refers to himself and Mrs. Morrison Dietz as "us" and "we," states he and Mrs. Morrison Dietz "are fully prepared to play hardball," and further makes clear that the allegedly defamatory statements, the statements made with the purpose of causing emotional distress, and certain of the alleged extortionate communications are made by Morrison with the understanding and involvement of Mrs. Morrison Dietz. After review of the plaintiff's arguments, this Court concludes a *prima facie* case has been made that Article 2324 has application in this case, such that Article 2324 could, potentially, operate to permit a court or jury to conclude Mrs. Morrison Dietz "conspired," as contemplated by Article 2324, with Mr. Morrison to defame plaintiff, inflict emotional distress on plaintiff, and extort him. Thus, to the extent Article 2324 grants plaintiff an additional avenue to

pursue his underlying torts, plaintiff has made a *prima facie* case for its application sufficient to allow the exercise of personal jurisdiction.[10]

The foregoing finding is limited specifically to the showing that must be made in connection with the personal jurisdiction issue, that is, this Court concludes only that plaintiff has made a *prima facie* showing in this regard. Whether plaintiff's allegations concerning the applicability of La. Civ. Code art. 2324 could survive a Rule 12(b) motion or motion for summary judgment is unknown to this Court and is an issue that is not before this Court at this time.

## II. Jurisdiction

Finally, in reviewing this matter, this Court has question as to whether this Court properly has jurisdiction over this case. Jurisdiction is based on diversity jurisdiction, and given the unique situation regarding Mrs. Morrison Dietz, who is alleged to be a citizen of the United States, and resident of Mexico,[11] question exists as to Mrs. Morrison Dietz' particular legal status as it relates to diversity jurisdiction. Therefore, this Court raises the issue of jurisdiction *sua sponte*.

Considering the foregoing, IT IS ORDERED that the parties shall file pocket briefs, affidavits and any discovery as it relates to the issue of jurisdiction within 15 days of the date of this Ruling, addressing the issue of this Court's jurisdiction. Should any party not be able to file their pocket brief within the delays set forth herein, that party shall within five 5 days of this ruling contact this Court to explain why the deadline is not feasible.[12]

---

[10] This Court need not consider or hold that application of Article 2324 presents plaintiff with an avenue of recovery against Mrs. Morrison Dietz, as she is not a movant in this matter.

[11] This Court notes, however, the petition states Mrs. Morrison Dietz moved to Belize in 2002.

[12] This Court has particular interest in the interplay of diversity jurisdiction when one claims U.S. citizenship, perhaps maintains a U.S. residence for other legal purposes, but lives outside the U.S. for all or part of each calender year.

## III. Conclusion

For the foregoing reasons,

IT IS HEREBY ORDERED that the Motion to Dismiss Based on Lack of Personal Jurisdiction [Doc. 4] filed by defendant Richard Morrison is GRANTED IN PART AND DENIED IN PART, as follows:

IT IS ORDERED that the magistrate judge's findings with respect to specific personal jurisdiction over Mr. Morrison are AFFIRMED IN PART AND REVERSED IN PART. This Court concludes it has specific personal jurisdiction over Mr. Morrison in connection with plaintiff's claims for defamation, intentional infliction of emotional distress, and certain aspects of plaintiff's extortion claim, but does not have specific personal jurisdiction over Mr. Morrison in connection with plaintiff's claim for tortious damage to, and interference with, personal and real/immovable property.

With respect to plaintiff's extortion claim, IT IS ORDERED THAT to the extent plaintiff's claims of extortion are based on allegations Mr. Morrison attempted to extort property from plaintiff by threatening "hardball" tactics including attempting to collect alleged arrearages in child support, attorney fees and certain property located in Mexico which Mr. Morrison alleges his sister, the plaintiff's ex-wife, is entitled to retain, the magistrate judge's findings are AFFIRMED, and Mr. Morrison's motion to dismiss the foregoing claims is GRANTED, as the foregoing allegations do not constitute extortion as a matter of law. However, to the extent plaintiff's extortion claim is based on allegations Mr. Morrison threatened either plaintiff or plaintiff's parents with restricted access to plaintiff's children, this Court concludes such contacts are sufficient to establish personal jurisdiction over Mr. Morrison in this forum. Therefore, Mr. Morrison's motion to dismiss any such

claims is DENIED, as this Court concludes the plaintiff has presented a *prima facie* case of extortion with respect to such allegations.

Therefore, IT IS ORDERED that Mr. Morrison's motion to dismiss plaintiff's claims of defamation, intentional infliction of emotional distress, and extortion is DENIED, and Mr. Morrison's motion to dismiss plaintiff's claim of tortious damage to, and interference with, personal and real/immovable property is GRANTED.

IT IS FURTHER ORDERED that a *prima facie* case has been made that Article 2324 has application in this case, such that Article 2324 could, potentially, operate to permit a court or jury to conclude Mrs. Morrison Dietz "conspired," as contemplated by Article 2324, with Mr. Morrison to defame plaintiff, inflict emotional distress on plaintiff, and extort him. Thus, to the extent Article 2324 grants plaintiff an additional avenue to pursue his underlying torts, plaintiff has made a *prima facie* case for its application sufficient to allow the exercise of personal jurisdiction.

IT IS FURTHER ORDERED that the parties shall file pocket briefs, affidavits and any discovery as it relates to the issue of jurisdiction within 15 days of the date of this Ruling, addressing the issue of this Court's jurisdiction. Should any party not be able to file their pocket brief within the delays set forth herein, they shall contact this Court within 5 days of this ruling to explain why the deadline is not feasible.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this ___24___ day of August, 2009.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

24